UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:99-cr-00125-KMM

EFRAIN CASADO,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

## **ORDER**

THIS CAUSE came before the Court upon Petitioner Efrain Casado's Omnibus Motion for Relief from Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(6) or alternatively through a Writ of Audita Querela under the All Writs Act, 28 U.S.C. § 1651(a) (ECF No. 1286). In essence, Petitioner is attempting to collaterally challenge his life sentence for his role in a cocaine distribution conspiracy through what can only be described as "inventive captioning" in an effort to avoid the Antiterrorism and Effective Death Penalty Act ("AEDPA") restrictions. *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004). Yet, as Judge Easterbrook points out, whether you "[c]all it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference. It is [the] substance that controls." *Id.* (citation omitted). For the reasons that follow, Petitioner's Motion is DENIED.

**I.    BACKGROUND**

From at least 1992 through 1998, Petitioner Efrain Casado, a/k/a "E Four" or "E-Fo" and his friend Kenneth Williams, a/k/a "Boobie," supervised the supply and distribution of increasingly large amounts of cocaine to an intertwined network of drug distributors. The Miami arm of this drug enterprise came to be known colloquially as the "Boobie Boys" and was responsible for the importation of tons of cocaine and the deaths of dozens of rival drug dealers. In fact, violence was part and parcel of the Boobie Boys' operation, especially as it became larger and more sophisticated. For example, a turf war led to the execution—on Casado's orders—of two rival drug dealers and one five-year old boy at the Colors Apartment complex. On another occasion, Casado and several accomplices tracked down two rival drug dealers and gunned them down in a gas station parking lot in Miami. Not long after the first federal indictment was returned, Casado and a majority of his codefendants were taken into custody.

After a thirty-one day trial in early 2000, Petitioner Efrain Casado was convicted of: (1) engaging in a continuing criminal enterprise in violation of 21 U.S.C. §§ 848(a), (b)(2)(A) (Count 1); (2) conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2 (Counts 8 and 10); and (3) conspiracy to use and carry a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(0), (n) (Count 16). This Court sentenced him to life imprisonment as to Counts 1, 8, and 10, to run concurrently with each other, and 240 months as to Count 16. *See* (ECF No. 779). On December 13, 2005, the Court of Appeals for the Eleventh Circuit affirmed Casado's conviction. *See United States v. Baker*, 432 F.3d 1189 (11th Cir. 2005). On February 1, 2011, Casado filed a motion to vacate his conviction under 28 U.S.C. § 2255, *see Casado v. United States of America*, 11-cv-20345-KMM (ECF No. 1), which the Court dismissed without

prejudice, "with the exception as to whether the statute of limitations and any other procedural bar may be applicable at the time of re-filing." *Id*. (ECF No. 11). On December 7, 2011, the Court denied Casado's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(2). *See* (ECF No. 1193). On December 16, 2013, Casado again sought to vacate his conviction under 28 U.S.C. § 2255. *See Casado v. United States of America*, 13-cv-24517-KMM (ECF No. 1). After reviewing Magistrate Judge Patrick A. White's Report and Recommendation, the Court found on July 7, 2014, that Casado's Motion was time-barred and thus dismissed the motion and denied a certificate of appealability. *Id*. (ECF No. 18).

## II. DISCUSSION

Through the instant motion, Casado—a federal prisoner proceeding pro se—requests that the Court vacate Counts 1 and 16 of his conviction, reduce his sentence to 20 years on any remaining counts, run the remaining sentences concurrently, which in effect would result in Casado's immediate release. *See* Pet'r's Mot. (ECF No. 1286). To accomplish this task, Casado asks the Court to consider applying the rationale set out by Judge Gleeson in *United States v. Holloway*, 68 F. Supp. 3d 310 (E.D.N.Y. 2014), that proposes that district courts have the discretion, upon the Government's request, to reduce a defendant's sentence in the interest of fairness "even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence." Casado also implores the Court to vacate his sentence under Federal Rule of Civil Procedure 60(b) or through a writ of audita querela. Before turning to the substantive arguments set forth in Casado's motion, the Court will lay out the relevant habeas framework which guides the Court's analysis of the instant motion.

1. AEDPA's Legislative Restrictions on Post-Conviction Review

In the wake of the horrific bombing in 1995 of the Alfred P. Murrah Federal Building in Oklahoma City, Congress enacted AEDPA which "dramatically altered the landscape for federal habeas corpus petitions," *Rhines v. Weber*, 544 U.S. 269, 274 (2005), and imposed significant restrictions on the filing of second or successive habeas petitions in response to the abuse of the habeas writ by prisoners. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) ("The new restrictions on successive petitions constitute a modified res judicata rule, a restraint on what is called in habeas corpus practice 'abuse of the writ.'").

To be sure, AEDPA is often criticized for its poor legislative draftsmanship and sparse legislative history. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) ("[I]n a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting."); *see also* Note, *The Avoidance of Constitutional Questions and the Preservation of Judicial Review: Federal Court Treatment of the New Habeas Provisions*, 111 Harv. L. Rev. 1578, 1580 (1998) ("There is scant legislative history discussing the habeas provisions."). Despite these shortcomings, courts expressly recognize that Congress's intent in passing AEDPA was to encourage finality and "streamline collateral review and to discourage repetitive and piecemeal litigation." *Triestman v. United States*, 124 F.3d 361, 378 (2d Cir. 1997); *see also Williams v. Taylor*, 529 U.S. 420, 436 (2000) ("There is no doubt Congress intended AEDPA to advance the[]" principles of "comity, finality, and federalism"); *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) ("A fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings.").

After all, finality of criminal sentences is a hallmark principle of our jurisprudential system. *See Johnson v. United States*, 544 U.S. 295, 309 (2005) ("[T]he United States has an interest in the finality of sentences imposed by its own courts."); *Teague v. Lane*, 489 U.S. 288,

309 (1989) ("Without finality, the criminal law is deprived of much of its deterrent effect."); *see also* Paul M. Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*, 76 Harv. L. Rev. 441, 452 (1963) ("The idea of just condemnation lies at the heart of the criminal law, and we should not lightly create processes which implicitly belie its possibility."). "Perpetual disrespect for the finality of convictions disparages the entire criminal justice system." *McCleskey v. Zant*, 499 U.S. 467, 492 (1991); *see also Custis v. United States*, 511 U.S. 485, 497 (1994) ("[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice.") (internal quotation marks omitted).

For the most part, the passage of AEDPA has had its intended effect. However, as time marches on, petitioners have increasingly attempted to sidestep the strictures of the Act by resurrecting the various procedural avenues that AEDPA intended to lay to rest. These efforts to circumvent—or impermissibly expand—the framework for collaterally challenging a sentence are not without costs to both society and the courts. Such contumacious conduct forces courts to waste scarce judicial resources, inhibits judicial efficiency, and "threatens the capacity of the system to resolve primary disputes." *McCleskey*, 499 U.S. at 491. "It is these repeated attacks, which often take on new forms as the legal landscape shifts, that are the evil against which AEDPA [wa]s directed." *Leal Garcia v. Quarterman*, 573 F.3d 214, 222 (5th Cir. 2009).

For the reasons set forth below, Petitioner's creative captioning does not provide him a platform from which to collaterally challenge his sentence. Unfortunately, the Court is intimately aware that the arguments raised by Petitioner are not exclusive to his case, but are instead indicative of a systematic attempt by petitioners around the country to throw as much mud against the wall with the hope that courts will sift through to see what sticks in order to

relieve them of their sentences.  Our Constitution commands no such inquiry.

        2.        <u>Casado's Asserted Reliance on *Holloway* is Unpersuasive</u>

In *Holloway*, Judge Gleeson recognized the excessive nature of defendant Francois Holloway's mandatory minimum sentence of fifty-seven (57) years for three "stacked" convictions under 18 U.S.C. § 924(c) and called on the U.S. Attorney's Office to agree to an order vacating two of Holloway's three § 924(c) convictions so Holloway could face a "more just resentencing."  *Holloway*, 68 F. Supp. 3d at 314.  Judge Gleeson's rationale for requesting the vacatur was that the "stacking" of multiple offenses that arise from the same case often results in a "manifestly unjust mandatory sentence with a disparate impact on black men." *Holloway v. United States*, No. 01-CV-1017, 2014 WL 1942923, at *2 (E.D.N.Y. May 14, 2014) ("Holloway deserved harsh punishment for his three robberies, but no one can reasonably contend that his mandatory sentence was not excessive.").  The United States Attorney's Office—then under the direction of current Attorney General Loretta Lynch—ultimately agreed to the court's vacatur of two of the § 924(c) convictions, and the court proceeded to resentence Holloway on the remaining § 924(c) count.

Although Casado attempts to paint the circumstances surrounding his sentencing as being similar to those that led Judge Gleeson to question the severity of Holloway's sentence, the Court is left with a different impression.  First, Casado's relatively good behavior in prison over the past seventeen years, while admirable, does not warrant a finding that Casado's sentence is unconstitutional.  Second, Casado's argument that his sentence is disproportionately severe compared to sentences received by other major drug traffickers—like Griselda Blanco and George Jung—is unavailing as there are likely an infinite number of reasons that the sentences varied between these defendants (extent of government cooperation, different counts in the

relative indictments, evidentiary basis for conviction at trial, sentencing guidelines, etc.).  After all, the Supreme Court has long sanctioned prosecutors' decisions to seek the imposition of disparate sentences among individuals committing similar offenses.  *See, e.g.*, *Williams v. Illinois*, 399 U.S. 235, 243 (1970) ("The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.").

A prosecutor's central focus as a sovereign representative "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).  The Government performed this duty faithfully and the Court will not ask the United States Attorney's Office to consider vacating any of Casado's convictions on the grounds that his life sentence is grossly disproportionate to the offenses charged.  It is not.  *See United States v. Vaughn*, 527 F. App'x 826, 827 (11th Cir. 2013) ("The Supreme Court has upheld the constitutionality of statutes that provide for mandatory sentences of life imprisonment without the possibility of parole for adult drug offenders.").

   3. <u>Federal Rule of Civil Procedure 60(b) Cannot Provide Casado Relief</u>

Federal Rule of Civil Procedure 60(b) authorizes a court to relieve a party from an order or judgment for any of six enumerated reasons.  *See* Fed. R. Civ. P. 60(b).  Rule 60(b)(6) serves as a catch-all provision and permits a court to grant relief for "any other reason that justifies relief" from the operation of the judgment.  *See* Fed. R. Civ. P. 60(b)(6); *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005).  However, the Federal Rules of Civil Procedure "unambiguously" limit their application to civil proceedings.  *United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003) (internal quotation omitted). In fact, the Eleventh Circuit has repeatedly held that Rule 60(b) "does not provide for relief from judgment in a criminal case." *United States v. Mosavi*,

7

138 F.3d 1365, 1366 (11th Cir. 1998); *see also United States v. Blanco*, No. 15-11767, 2015 WL 7444877, at *2 (11th Cir. Nov. 24, 2015); *United States v. Barber*, No. 14-14304-DD, 2015 WL 1534073, at *1 (11th Cir. Feb. 17, 2015) ("Rule 60(b) applies only in civil cases, and a motion under that rule is not a proper way to challenge a criminal conviction or sentence.").

As Rule 60(b) is clearly a rule of civil procedure, Casado cannot rely upon it to set aside his conviction and sentence in this *criminal* case.  The only place that Rule 60(b) could provide Casado relief is the various civil actions where he previously sought to vacate his conviction under 28 U.S.C. § 2255.  *See e.g.*, *United States v. Richardson*, 481 F. App'x 534, 536 (11th Cir. 2012) ("Similarly, to the extent [petitioner] sought relief under Rule 60(b), he was not entitled to it.  [Petitioner]'s petition challenged the validity of his conviction, rather than a defect in the integrity of his earlier § 2255 motion proceeding.")  Although Casado urges the Court not to construe the instant motion as a second or successive § 2255 motion, the Court will not entertain this creative attempt to avoid the strict "restraints on successive habeas petitions."  *Felker v. Turpin*, 101 F.3d 657, 661 (11th Cir. 1996).  Because Casado's Rule 60(b) motion is in essence a second or successive habeas petition, Casado must receive authorization from the Eleventh Circuit in order for this Court to have subject matter jurisdiction over his claims.  *See* 28 U.S.C. §§ 2244(b)(3)(A), 2255(h).  Casado has not done so here and the Court lacks jurisdiction to grant him any collateral relief from his sentence.

   4.  Petition for Writ of Audita Querela

The All Writs Act allows "all courts established by Act of Congress [to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  However, this "residual source of authority to issue writs that are not otherwise covered by statute" does not apply where a statue specifically

addresses the issue. *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985); *see also United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005) ("[A] writ of audita querela may not be granted when relief is cognizable under § 2255."). Although the writ of audita querela was "typically employed by a debtor in a civil case to stop a judgment's execution . . . [it] is now available only to attack a criminal judgment." *Orlansky v. United States*, 627 F. App'x 915 (11th Cir. 2015). "Despite what a prisoner may entitle his motion, a motion that collaterally attacks a prisoner's sentence as being unconstitutional is a motion to vacate under § 2255." *Walker v. United States*, 367 F. App'x 67, 68 (11th Cir. 2010).

Various circuit courts have explained that the purpose of making the writ of audita querela available in criminal cases is to fill in gaps in the system of federal post-conviction remedies. *See, e.g., Massey v. United States*, 581 F.3d 172, 174 (3d Cir. 2009) (holding that the writ of audita querela "is available in criminal cases to the extent that it fills in gaps in the current system of post-conviction relief"); *Holt*, 417 F.3d at 1175 ("The teaching of *Morgan* is that federal courts may properly fill the interstices of the federal postconviction remedial framework through remedies available at common law."); *United States v. Valdez–Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001) ("[T]he common law writs survive only to the extent that they fill 'gaps' in the current systems of postconviction relief.").

Because Casado's arguments have previously been examined and denied under the current framework for post-conviction relief, there is no gap in the current system that needs to be filled in by a writ of audita querela. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the

9

sentence."). The fact that Casado may be procedurally barred from bringing another § 2255 petition does not establish that the statutory remedy is inadequate or ineffective. *See Richardson,* 481 F. App'x at 535; *Bedolla-Izazaga v. United States,* 413 F. App'x 20, 21 (10th Cir. 2011); *Valdez-Pacheco*, 237 F.3d at 1080 ("A prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations create a gap in the postconviction remedies that must be filled by the common law writs."). In short, the writ of audita querela is not an appropriate avenue to assist Casado in circumventing § 2255's one year statute of limitations period. Moreover, equitable reasons alone—even of the most compelling nature—are insufficient to invoke audita querela. *See United States v. Fonseca-Martinez*, 36 F.3d 62, 65 (9th Cir. 1994) (collecting cases).

### III.   CONCLUSION

Considering Petitioner's creative efforts to end-run AEDPA, Justice Holmes' famous declaration in *Southern Pacific Co. v. Jensen* applies with remarkable force here: "The [] law is not a brooding omnipresence in the sky, but the articulate voice of some sovereign or quasi sovereign that can be identified." *S. Pac. Co. v. Jensen*, 244 U.S. 205, 222 (1917) (Holmes, J., dissenting). Through the passage of AEDPA, Congress clearly articulated the parameters and procedures that a petitioner must follow in order to bring a permissible collateral challenge to their sentence. Contrary to Petitioner's request, the Court cannot engage in judicial activism and eschew the mandates it must follow. Therefore, the Court has no legal basis to grant Casado any of the various forms of relief he seeks. Accordingly, Petitioner Efrain Casado's Omnibus Motion for Relief from Final Judgment (ECF No. 1286) is DENIED.

This case shall remain CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>9th</u> day of August, 2016.

_____
K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:  All counsel of record